United States District Court
Southern District of Texas
ENTERED

APR 27 2007

Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ANDREW PAUL SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-05-302 |
| | § | |
| CAMERON COUNTY, TEXAS, and | § | |
| OMAR LUCIO, SHERIFF OF CAMERON | § | |
| COUNTY, TEXAS, | § | |
| | § | |
| Defendants. | § | |

## OPINION & ORDER

BE IT REMEMBERED that on April 27, 2007, the Court considered Cameron County's Motion for Summary Judgment, Dkt. No. 7, Plaintiff's Response to Defendant Cameron County's Motion for Summary Judgment, Dkt. No. 11, and Cameron County's Reply to the Plaintiff's Response to Defendant Cameron County's Motion for Summary Judgment and Opposed Motion to Strike Plaintiff's Summary Judgment Evidence, Dkt. No. 13.

Andrew Paul Smith ("Plaintiff") filed the instant civil action against Cameron County, Texas ("County") and Sheriff Omar Lucio, in his official capacity, alleging that the County violated his constitutional rights while he was in custody at a county-operated detention center on or about November 7–8, 2003. Dkt. No. 1, Ex. 4 at 2–3. After the conclusion of the discovery period for this case, Defendants filed the instant motion for summary judgment, contending that there is no genuine issue of material fact on any element of Plaintiff's claims. Dkt. No. 7. Plaintiff filed a response to Defendants' motion. Dkt. No. 11. Thereafter, Defendants filed a reply to Plaintiff's response, which included a motion to strike a portion of Plaintiff's summary judgment evidence. Dkt. No. 13.

## I. Factual and Procedural Background

On October 31, 2003, Plaintiff was placed in the custody of Cameron County Sheriff's Department officials at the Carrizales-Rucker Detention Center in Olmito, Texas. Dkt. No. 7, at 2; Dkt. No. 7, Ex. 2. He underwent the standard initial assessment procedure and was assigned to Cellblock A-4 based upon a classification system used to evaluate all incoming detainees at the detention center. See Dkt. No. 7, at 3; Dkt. No. 7, Ex. 5. On November 7, 2003, Plaintiff was threatened and pushed by a fellow inmate named "Meme" or "Memo" while he was in a holding cell at another county facility, after having made an appearance in court. Dkt. No. 11, Ex. A at 2–3. As a result of this threat, Plaintiff was "put in a holding cell all by [himself] . . . [and] [b]ecause of the threat, [he] was not transported back to the [d]etention center with the other inmates." Id. at 3. The decision to isolate Plaintiff as a result of the threat by the other inmate "was made by the Deputy Sheriff." Id. Once Plaintiff was returned to the detention center, he was placed back in his original cellblock. Id.; Id., Ex. C at 55. The inmate who had threatened Plaintiff was not being housed in the same cellblock as Plaintiff. Id., Ex. C at 55.

However, on or about November 7–8, 2003, Plaintiff suffered injuries after he was attacked by other detainees in his cellblock, who allegedly belonged to the same gang as the inmate who had threatened Plaintiff. Dkt. No. 1, Ex. 4 at 2; see Dkt. No. 7, Ex. 6. Plaintiff was discovered by facility employees on November 8, 2007 at 8:00 a.m. and was taken to the facility's infirmary. Dkt. No. 7, Ex. 8. Thereafter, Plaintiff was taken to a local hospital to receive further medical care. Id., Exs. 6, 8, 17. He was subsequently returned to the detention center and continued to receive follow-up medical care for his injuries. Id., Exs. 8–11, 13. He was ultimately referred back to a hospital for medical care on December 4, 2003. Id., Ex. 13.

Plaintiff filed the instant action against Defendants on November 4, 2005. Dkt. No. 1, Ex. 4. Plaintiff alleges a cause of action under the Texas Tort Claims Act, found at Section 101.001 et seq. of the Texas Civil Practice & Remedies Code, claiming that county jailers and deputies were negligent while acting within the scope of their employment with the County. Dkt. No. 1, Ex. 4 at 3. Additionally, Plaintiff also alleges that Defendants violated his right to be free from cruel and unusual punishment under the Eighth

Amendment of the United States Constitution, and he therefore asserts a cause of action under 42 U.S.C. § 1983. *Id.* Specifically, Plaintiff contends that he gave actual notice to deputies and jailers that he "was the target of a planned beating and physical retaliation from fellow inmates," but despite such notice Plaintiff was "placed in the same cell with the very detainees who had made the threats of physical violence" against him. *Id.* at 2. Furthermore, Plaintiff claims that Defendants policies or customs were the moving forces behind the violation of his constitutional rights and that Defendants "failed to abide by their own written policies which require deputies and jail personnel to protect detainees from harm and to segregate detainees known to be dangerous." *Id.* Plaintiff maintains that he suffered severe injuries as a result of the alleged constitutional violations. *Id.* at 3–4.

## II.   Summary Judgment Standard

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the Court demonstrate that no genuine issue of material fact exists, and the movant is thus entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Piazza's Seafood World, LLC v. Odom, 448 F.3d 744, 752 (5th Cir. 2006); Lockett v. Wal-Mart Stores, Inc., 337 F.Supp.2d 887, 891 (E.D. Tex. 2004). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's Seafood World, LLC*, 448 F.3d at 752 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court must view all evidence in a light most favorable to the non-moving party. *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F.Supp.2d at 891. Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 36 F.3d 1069, 1075 (5th Cir. 1994). Thus, the Court will not, *"in the absence of proof, assume that the nonmoving party could or would prove the necessary facts." Id.* (emphasis in original) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)); *see also* TIG Ins. Co. v. Eagle, Inc., Civ. Action No. 05-0179, 2007 WL 861153, at *2 (E.D. La. 2007) (quoting *Little*, 36 F.3d at 1075).

The non-movant has no duty to respond to a motion for summary judgment until the moving party meets its burden of showing that no genuine issue of fact exists. *See Lockett*, 337 F. Supp. 2d at 891 (citing Ashe v. Corley, 992 F.2d 540, 543 (5th Cir. 1993)). Thus, a Court may not grant summary judgment simply because there has been no opposition to the motion. Hibernia Nat'l Bank v. Admin. Cental Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985) (citing John v. Louisiana (Bd. of Trustees for State Colleges and Universities), 757 F.2d 698, 709 (5th Cir. 1985)). If the movant fails to meet its initial burden, the nonmovant is not required to respond to the motion. *John*, 757 F.2d at 708. However, if the movant satisfies its burden, the non-movant must then come forward with specific evidence to show that there is a genuine issue of fact. *Lockett*, 337 F. Supp. 2d at 891; *see also Ashe*, 992 F.2d at 543. The nonmovant may not merely rely on conclusory allegations or the pleadings. *Lockett*, 337 F. Supp. 2d at 891. Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. FED. R. CIV. P. 56(e); *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). Thus, once it is shown that a genuine issue of material fact does not exist, "[s]ummary judgment is appropriate . . . if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" Arbaugh v. Y&H Corp., 380 F.3d 219, 222–23 (5th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

## III. Defendants' Motion to Strike Summary Judgment Evidence

Defendants have filed an Opposed Motion to Strike Plaintiff's Summary Judgment Evidence, Dkt. No. 13, contending that the sworn affidavits of Joe Guajardo ("Guajardo") and Plaintiff contain information that is irrelevant, contradicts previous deposition testimony, and does not result from personal knowledge of the facts of the instant action. Dkt. No. 13 Furthermore, Defendants assert that the affidavit of Joe Guajardo should be struck in its entirety because Plaintiff did not identify Guajardo as a person with knowledge

-4-

of relevant facts during the discovery phase of this case, in violation of procedural rules. *Id.* at 2–3. Although Defendants indicate that its motion to strike is opposed, Plaintiff did not respond to Defendants' contentions.

### A. *Affidavit of Joe Guajardo*

Federal Rule of Civil Procedure 26(a)(1)(A) requires parties to disclose the name of "each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subject of the information." Parties must provide this information in their initial disclosures, and they must supplement their disclosures to include any information that is acquired thereafter. FED. R. CIV. P. 26(a)(1)(A), (e)(1). If a party fails to disclose the information required by Rule 26(a) or 26(e)(1) without substantial justification, then the party "is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." FED. R. CIV. P. 37(c)(1).

Defendants assert that Plaintiff never disclosed or identified Joe Guajardo as a person with any knowledge relevant to the instant action. Dkt. No. 13, at 2–3, 11. Plaintiff did not respond to this assertion. Defendants state that the first time they learned of Guajardo's name was in Plaintiff's response to the instant motion for summary judgment. *Id.* At that time, the discovery period of this case and the time for depositions had already expired. Dkt. No. 6. Thus, Defendants were deprived of the opportunity to timely depose Guajardo. Plaintiff's evidence in opposition to summary judgment consists only of Plaintiff's affidavit and deposition transcript and the affidavit of Joe Guajardo. The Court finds that Plaintiff's failure to disclose Guajardo to Defendants prior to the time of Plaintiff's response to the instant motion was not harmless error because Plaintiff produced Guajardo's affidavit to oppose summary judgment, the information stated by Guajardo is not included in any other sources of evidence that Plaintiff produced, and Defendants' failure to have the opportunity to depose Guajardo deprived Defendants of the opportunity to adequately assess and examine Guajardo's knowledge of the instant matter. *Johnson v. Saks Fifth Ave. Tex.*, Civ. Action No. H-05-1237, 2007 WL 781946, at *15 (S.D. Tex. Mar. 9, 2007). Therefore, the Court **GRANTS IN PART** Defendant's Opposed Motion to

Strike Plaintiff's Summary Judgment Evidence, as it pertains to the affidavit of Joe Guajardo. Dkt. No. 13. Accordingly, the Court **STRIKES** Guajardo's affidavit in its entirety. Dkt. No. 11, Ex. B.

### B.     *Affidavit of Andrew Paul Smith*

Evidence supporting or opposing summary judgment may be submitted in affidavit form, so long as the affidavits are "made on personal knowledge . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e); Hardtke v. Hartford, No. SA-04-CA-1006 NN, 2006 WL 2924942, at *5 (W.D. Tex. Oct. 10, 2006). A court must examine all summary judgment evidence presented and may not strike affidavit evidence simply because it conflicts with evidence presented in a previous deposition, even if credibility issues are raised by the conflict. Buchanan v. Heerema Marine Contractors U.S., No. Civ.A. H-04-3885, 2005 WL 2458019, at *4 (S.D. Tex. Oct. 5, 2005) (citing Kennett-Murray Corp. v. Bone, 622 F.2d 887, 893 (5th Cir. 1980)). However, a nonmovant is not allowed to offer a contradictory affidavit in order to merely "manufacture a disputed material fact where none exists." Buchanan, 2005 WL 2458019 at *4 (internal quotations omitted) (quoting Albertson v. T.J. Stevenson & Co., 749 F.2d 223, 228 (5th Cir. 1984)); see also Doe v. Dallas Indep. Sch. Dist., 220 F.3d 380, 386 (5th Cir. 2000). "Thus, the nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." Albertson, 749 F.2d at 228. Furthermore, an explanation of conflicting evidence is required when the only evidence aimed at showing the existence of a genuine issue of material fact, and therefore to prevent summary judgment, is an affidavit that contradicts deposition testimony. Copeland v. Wasserstein, Perella & Co., 278 F.3d 472, 482 (5th Cir. 2002).

Defendants object to Plaintiff's affidavit as summary judgment evidence, contending that Plaintiff does not have personal knowledge of certain pieces of information in his affidavit and that his affidavit contradicts portions of his deposition testimony. Dkt. No. 13, at 7–11. Plaintiff did not respond to these assertions. In his affidavit, Plaintiff declares that "I was beaten in the afternoon of November 7, 2003. I laid in the cell, without medical

attention and without having any access to any guard or without any guard coming by to check the cell, until the next morning, November 8, 2003 at about 8:15 a.m." Dkt. No. 11, Ex. A at 3. Defendants contend that despite Plaintiff's declarations, he does not have personal knowledge of whether cell checks were actually conducted during the time after he was attacked until the time he was discovered by jail deputies. Dkt. No. 13, at 7–8. Defendants' argument is based on Plaintiff's deposition testimony, in which he stated that he was "in and out of consciousness a lot" after the attack was over. *Id.*, Ex. 1 at 1; Dkt. No. 11, Ex. C at 36. Thus, Defendants aver that Plaintiff could not have known whether cell checks were conducted because he was not conscious throughout the entire time period in question, and therefore the declaration is conclusory. Dkt. No. 13, at 7–8. Defendants also argue that the affidavit contradicts Plaintiff's deposition testimony regarding the time that he was attacked, because Plaintiff's deposition testimony indicated that he was attacked after the evening meal. *Id.*; *Id.*, Ex. 1 at 3; Dkt. No. 11, Ex. C at 48.

Defendants also object to Plaintiff's affidavit declaration that he "called out for assistance and medical attention to the jailers from [his] jail cell [but] [n]o jailer responded," asserting that the statement contradicts Plaintiff's deposition testimony. Dkt. No. 13, at 8–9; Dkt. No. 11, Ex. A at 2. Plaintiff's deposition contains numerous statements declaring that he was unable to "holler at anyone," could not reach the intercom that is used to communicate with jail employees, and was not able to even attempt to attract the attention of jail employees because inmates were guarding him. Dkt. No. 13, Ex. 1 at 1–3; Dkt. No. 11, Ex. C at 35–37.

The Court determines that Plaintiff possesses the requisite personal knowledge necessary to allow into summary judgment evidence his affidavit statement regarding whether jail employees conducted cell checks on the evening in question. Although Plaintiff may have lapsed in and out of consciousness during some portions of the time after the attack, he was awake and aware of his surroundings throughout portions of that same time and may provide evidence as to what he observed and experienced. Accordingly, the Court **DENIES IN PART** Defendant's Opposed Motion to Strike Plaintiff's Summary Judgment Evidence, as it pertains to Plaintiff's affidavit declaration regarding whether jail employees conducted cell checks on the evening in question. Dkt. No. 11, Ex.

A at 2. The Court also finds that Plaintiff's affidavit statement declaring that he called out for medical assistance directly contradicts Plaintiff's previous deposition testimony. Plaintiff has not offered any explanation regarding this conflict. The Court determines that the pertinent portion of Plaintiff's affidavit is an attempt to manufacture a genuine issue of fact where none exists. Therefore, the Court **GRANTS IN PART** Defendant's Opposed Motion to Strike Plaintiff's Summary Judgment Evidence, as it pertains to Plaintiff's affidavit declaration that he called out for assistance and medical attention after he had been attacked by fellow inmates. Dkt. No. 11, Ex. A at 2.

### IV. Analysis of Plaintiff's Claims Under 42 U.S.C. § 1983

Title 42, Section 1983 of the United States Code provides a private right of action for redressing federal constitutional violations committed by persons acting under the color of state law. *Casanova v. City of Brookshire*, 199 F.Supp.2d 639, 648 (S.D. Tex. 2000). To prevail on a claim under § 1983, a plaintiff must show that a defendant amenable to suit under the statute deprived plaintiff of a constitutional right. *Id.* at 649; *Brown v. Hill*, No. 05-71240, 2006 WL 2844147, at *4 (E.D. Mich. Sept. 29, 2006). Furthermore, the alleged constitutional deprivation must be shown to have been the result of deliberate indifference, and not merely the result of negligent conduct. *Casanova*, 199 F.Supp.2d at 649 ("The negligent deprivation of life, liberty, or property is not a constitutional violation.") (citing *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995)). A plaintiff must support his allegations with specific facts establishing the constitutional violation and may not merely rely on conclusory statements. *Casanova*, 199 F.Supp.2d at 649.

In the present case, Plaintiff alleges that Defendants' conduct "violated [his] Eighth Amendment right to be free from cruel and unusual punishment [including his] Eighth Amendment right to be reasonably protected from the threat of violence by fellow inmates." Dkt. No. 1, Ex. 4 at 3. Plaintiff alleges that Defendants violated Plaintiff's Eighth Amendment right "by the unnecessary and wanton infliction of pain by other inmates in light of the prior notice and warning to jailers and/or deputies (or the anticipated attach [sic] upon Plaintiff by other inmates)." *Id.* Plaintiff also alleges that "the policy and or custom of the Defendants was the moving force of the constitutional violation." *Id.* However,

Plaintiff also declares that "Defendants failed to abide by their own written policies which require deputies and jail personnel to protect detainees from harm and to segregate detainees known to be dangerous for the purposes of control, discipline and health reasons." *Id.* Plaintiff's complaint also states that Plaintiff's calls for medical attention after he was attacked were ignored by jailers. *Id.* at 2. The Court will address Plaintiff's claims and evaluate whether there is an absence of a genuine issue of material fact regarding any of Plaintiff's claims.

### A. *Liability Under 42 U.S.C. § 1983*

<u>i. Whether Cameron County May Be Liable</u>

A municipality qualifies as a "person" that is amenable to suit under 42 U.S.C. § 1983. Monell v. Dep't of Soc. Services of New York, 426 U.S. 658, 690 (1978); Webster v. City of Houston, 735 F.2d 838, 848 (5th Cir. 1984); Hopkins v. Nacogdoches County, Texas, No. 9:04-cv-109, 2005 WL 1606578, at *3 (E.D. Tex. July 1, 2005). However, a municipality may not be held liable under § 1983 on the basis of its employees' conduct alone, as there is no *respondeat superior* or right of control liability under the statute. *Monell*, 426 U.S. at 694; Brown v. Lyford, 243 F.3d 185, 191 (5th Cir. 2001); *Hopkins*, 2005 WL 1606578, at *3. Instead, in order for a municipality such as Cameron County to be held liable under § 1983, a party must show that the constitutional violation that occurred was the result of a government's custom or policy. *Monell*, 426 U.S. at 694; *Lyford*, 243 F.3d at 191; *Hopkins*, 2005 WL 1606578, at *3. Thus, in order to satisfy municipal liability as set forth in *Monell*, a party must demonstrate "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002); see *Hill*, 2006 WL 2844147, at *4 (quoting Polk County v. Dodson, 454 U.S. 321, 326 (1981)).

A claimant may prove the existence of a policy or custom in one of two ways. *Pineda*, 291 F.3d at 328. First, a claimant may show "[a] policy, statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers" or by those who have law-making authority. *Id.*; *Hopkins*, 2005 WL

1606578, at *3. Second, a claimant may also prove the existence of a "widespread, persistent practice" by municipal employees that, although not officially authorized or adopted as policy, nevertheless is so common and accepted that it "constitute[s] a custom that fairly represents municipal policy." *Pineda*, 291 F.3d at 328–29; *Hopkins*, 2005 WL 1606578, at *3. Additionally, a claimant must show that the municipality or an official with law-making authority had actual or constructive knowledge of the custom. *Pineda*, 291 F.3d at 328–29. A single incident, or the occurrence of relatively few incidents, is not enough to establish the existence of a custom. *See Pineda*, 291 F.3d at 329; *Campbell*, 43 F.3d at 977; *see also* Wayne v. City of San Antonio, Civ. No. SA-06-CV-551-XR, 2006 WL 3487022, at *4 (W.D. Tex. Nov. 30, 2006); *Hopkins*, 2005 WL 1606578, at *3.

### ii. Sheriff Omar Lucio's Possible Liability Under § 1983

Plaintiff has filed suit against Cameron County Sheriff Omar Lucio "in his official capacity only (and as successor to former Sheriff Conrado Cantu – sheriff of Cameron County at the time the incidents herein complained of took place)." Dkt. No. 1, Ex. 4 at 1. Plaintiff does not assert any specific personal involvement of the County Sheriff in the events that are the basis of the instant action. Under Texas law, a sheriff is a county's final policymaker. Turner v. Upton County, 915 F.2d 133, 136 (5th Cir. 1990). Thus, a sheriff's actions are the actions of the county. *Id.* at 137. For purposes of this motion, the Court will address Plaintiff's claims against Cameron County, Texas as the same as those against Sheriff Lucio, and the Court will discuss all claims in terms of Cameron County's liability.

### B.   *Plaintiff's Claims for Violation of the Eighth Amendment*

The Eighth Amendment of the Constitution provides for a prisoner's right to be free from cruel and unusual punishment. U.S. CONST. amend. VIII. However, the Eighth Amendment only applies once a defendant has been convicted of a crime. *See* Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979); Ingraham v. Wright, 430 U.S. 651, 664 (1977); Cupit v. Jones, 835 F.2d 82, 84 (5th Cir. 1987); Serrato v. City of Harlingen, No. Civ.A. B-05-323, 2006 WL 510010, at *5 (S.D. Tex. Mar. 1, 2006). Plaintiff's complaint and affidavit only state that he "was incarcerated in the Cameron County Jail on or about October 31,

2003 following an arrest on three misdemeanor offenses," and "[o]n or about November 21, 2003, Plaintiff was sentenced to six months in the Cameron County Jail." Dkt. No. 1, Ex. 4 at 2. The assault on Plaintiff on which his Eighth Amendment claim is based occurred on November 7, 2003. *Id.* Thus, Plaintiff has not provided any concrete evidence establishing that he had actually been convicted of a crime at the time of the occurrence of the events giving rise to the alleged constitutional violation. Therefore, the Eighth Amendment prohibition against cruel and unusual punishment is inapplicable to this case. Based on the foregoing, and because Plaintiff has failed to show any evidence regarding the proper application of the Eighth Amendment to his claims, the Court finds that Defendants are entitled to summary judgment on Plaintiff's § 1983 claims for alleged violations of the Eighth Amendment.

However, in accordance with the fundamental notion of interpreting pleadings so "as to do substantial justice," the Court will construe the substance of Plaintiff's complaint as alleging violations of a pretrial detainee's due process rights contained in the Fourteenth Amendment, which are made actionable by 42 U.S.C. § 1983. FED. R. CIV. P. 8(f); *see* Loredo v. Cameron County, Texas, No. B-05-cv-272, Dkt. No. 22, at 2 (S.D. Tex. Apr. 11, 2007).

### C.   *Plaintiff's Failure to Protect Claim*

In order to establish a failure to protect claim pursuant to 42 U.S.C. § 1983, a plaintiff must demonstrate that he was held in custody under conditions that posed a substantial risk of serious harm and that a municipal employee was deliberately indifferent to the plaintiff's need for protection. Watson v. Doss, No. Civ.A. V-02-0074, 2005 WL 1802108, at *2 (S.D. Tex. July 28, 2005) (citing Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)); *see* Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999). Deliberate indifference is more than mere negligence. *Casanova*, 199 F.Supp.2d at 649 (citing Farmer v. Brennan, 511 U.S. 825, 828–29 (1994)). Instead, it requires that the offending actor be aware of facts from which an inference of substantial risk of serious harm could be drawn, and the actor must actually draw that inference. Mack v. Reynolds, No. 797CV170R, 2000 WL 1808277, at *1 (N.D. Tex. Dec. 11, 2000); *see also Casanova*,

-11-

199 F.Supp.2d at 658 ("Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." (internal quotations omitted) (quoting Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 410 (1997))). Additionally, in order to establish a municipality's liability, a plaintiff must demonstrate that the municipal employee's act resulted from a policy or custom that was maintained with objective deliberate indifference to the plaintiff's constitutional rights. *Olabisiomotosho*, 185 F.3d at 526.

Defendants contend that no genuine issue of material fact exists regarding Plaintiff's failure to protect claim. Dkt. No. 7. In support of its contention, Defendants provide evidence demonstrating that it was not deliberately indifferent to Plaintiff's needs for safety and protection, as the County had policies in effect at the time of the assault on Plaintiff that set forth procedures aimed at providing for inmate safety and preventing inmate violence. Specifically, Defendants have produced the following evidence: Minimum Jail Standards set forth by the Texas Commission on Jail Standards ("Commission") concerning classification, separation, and supervision of inmates, Plaintiff's Initial Custody Assessment form, Plaintiff's Classification and Housing/Separation Profile, Plaintiff's Jail Classification Review, and the affidavit of Sergeant Dionicio Cortez. Dkt. No. 7, Exs. 1, 2, 5, 7, 15.

In his affidavit, Sergeant Cortez states that at the time of the assault on Plaintiff, Cortez was a classification, training, and grievance officer for the Cameron County Sheriff's Office Jail Division, and he has personal knowledge of the County's policies as a result of his position. *Id.*, Ex. 15 at 1. Specifically, Sergeant Cortez declares that the Minimum Jail Standards produced as evidence constituted official Cameron County policy at the time that Plaintiff was assaulted, and that the County Sheriff in office at that time, Conrado Cantu, was not personally involved in Plaintiff's classification assignment. *Id.* at 2. The standards, in pertinent part, call for the implementation of inmate classification plans that consider various risk factors, including but not limited to offense history, escape history, and alcohol or drug abuse. *Id.*, Ex. 1–B at 1. The standards also mandate that an inmate intake screening, initial custody assessment, and custody review be conducted. *Id.* at 2. Additionally, Plaintiff's Initial Custody Assessment form was completed on October 31,

2003, and the form considers gang affiliation in determining an inmate's custody level. The form establishes that the County's classification policy, as set forth by the Commission's jail standards, was applied to Plaintiff when he was taken into custody. *Id.*, Ex. 2. Furthermore, the Commission's jail standards provide for supervision of inmates by requiring appropriate numbers of officers at the correctional facility for regular observation 24 hours per day. *Id.*, Ex. 1–C at 1. The standards also state that "two-way voice communication capability between inmates and staff" shall be available. *Id.* By Plaintiff's own admission, the County's jail facility had intercoms which could be used by inmates to communicate with corrections officers. *See* Dkt. No. 13, Ex. 1 at 1; Dkt. No. 11, Ex. C at 35. Plaintiff's Classification and Housing/Separation Profile was also produced, and it establishes that the County's classification system was applied to Plaintiff when he was taken into custody on October 31, 2003. Dkt. No. 7, Ex. 5. Defendants also provided Plaintiff's Classification Review, showing that Plaintiff was reassigned to a different cellblock after the assault occurred and after he received medical treatment. *Id.*, Ex. 7. The review demonstrates that the County was acting in accordance with procedures set forth in the Commission's standards. *Id.*, Ex. 1-B at 2.

In response to Defendants' evidence, Plaintiff has produced his own affidavit and his deposition in order to show that there is a genuine issue of material fact as to his failure to protect claim.[1] Dkt. No. 11, Exs. A, C. In his affidavit, Plaintiff states that on November 3, 2003, he was threatened and pushed by a fellow inmate named "Meme" or "Memo" while he was in a holding cell at another county facility, after having made an appearance in court. *Id.*, Ex. A at 2–3. As a result of this threat, Plaintiff was "put in a holding cell all by [himself] . . . [and] [b]ecause of the threat, [he] was not transported back to the [d]etention center with the other inmates." *Id.* at 3. The decision to isolate Plaintiff as a result of the threat by the other inmate "was made by the Deputy Sheriff." *Id.* Plaintiff has presented inconsistent accounts of the actions he took while being transported in isolation

---

[1] Although Plaintiff submitted the affidavit of Joe Guajardo in order to show the existence of a material fact as to the County's alleged deliberate indifference regarding protection and safety of inmates, Guajardo's affidavit was not appropriate summary judgment evidence. *See supra* § III.A.

to inform other deputies of the threat against him. In his affidavit, Plaintiff declares that he protested being taken back to his cell because of the threat. *Id.* at 2. However, Plaintiff's deposition testimony indicates that he did not raise such concerns, and that he did not think he was going to be attacked or that he was in danger of being assaulted. Dkt. No. 11, Ex. C at 49, 53, 55, 60; Dkt. No. 13, Ex. 1 at 3–7. Plaintiff also asserts that no cell checks were conducted between the time he was assaulted until 8:00 a.m. on November 8, 2003. Dkt. No. 11, Ex. A at 3. However, as discussed *supra*, Plaintiff stated in his deposition that he was not awake throughout that entire time period. Dkt. No. 11, Ex. C at 36; *supra* § III.B.

Based on the foregoing evidence, the Court finds that there is no genuine issue of material fact as to Plaintiff's failure to protect claim. Defendants have produced evidence of the procedures and policies in place at the time of the assault on Plaintiff that provided for inmate safety, supervision, and protection. Additionally, Defendants did respond to knowledge of the original threat against Plaintiff, and it took actions to provide for Plaintiff's safety. Despite the evidence produced in support of his claim, Plaintiff has failed to produce any evidence showing that Defendants were deliberately indifferent to his safety or that any deliberate indifference of one of the County's employees, if any, was the result of a County policy or custom that was maintained with objective deliberate indifference to Plaintiff's rights. Therefore, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's failure to protect claim.

### D.  **Plaintiff's Medical Care Claim**

A pretrial detainee in state custody has a constitutional right to medical care that is secured by the due process components of the Fourteenth Amendment. Wagner v. Bay City, Texas, 227 F.3d 316, 324 (5th Cir. 2000) (citing Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996) (comparing and contrasting this right to a convicted prisoner's right to be free from cruel and unusual punishment under the Eighth Amendment)). As in the case of a claim for failure to protect, a municipality's liability will arise only if it is shown that a municipal employee acted with subjective deliberate indifference to a substantial risk of serious medical harm to the plaintiff. *Olabisiomotosho*, 185 F.3d at 526. Additionally, municipal liability will only arise if a violation of a detainee's right to medical care was the

result of an official policy or custom that was maintained with objective deliberate indifference, and of which a policy maker was actually or constructively aware. *Pineda*, 291 F.3d at 328; *Olabisiomotosho*, 185 F.3d at 526.

Defendants assert that there is no genuine issue of material fact as to Plaintiff's serious medical needs claim. In order to support their position, Defendants have produced the following evidence: Plaintiff's Medical Condition/Health History Profile, Plaintiff's Mental Disability/Suicide Screening form, Plaintiff's Inmate Incident Report, Jail Infirmary Progress Notes, notes pertaining to Plaintiff's referrals to a physician and to a hospital for follow-up care, and the Affidavit of Dean Garza (a registered nurse and Jail Infirmary Supervisor). Dkt. No. 7, Exs. 3, 4, 6, 8, 9, 10, 11, 12, 13, 17. Plaintiff's Medical Condition/Health History Profile and Mental Disability/Suicide Intake Screening form, which were created on October 31, 2003, demonstrate that Defendants were actively considering Plaintiff's health care upon his arrival at the detention center. *Id.*, Exs. 3, 4. Additionally, Plaintiff's Inmate Incident Report, Jail Infirmary Progress Notes dated November 8, 2003, and Dean Garza's affidavit establish that Defendants acted in a reasonable manner in seeking medical care for Plaintiff and referring him to a hospital within fifteen minutes of the discovery of Plaintiff's injuries. *Id.*, Exs. 6, 8, 17. Furthermore, Jail Infirmary Progress Notes and notes showing Plaintiff's referral to physicians and hospitals for follow-up care show that the County continued to provide medical care to Plaintiff after he was returned to the detention center from the hospital. *Id.*, Exs. 8, 9, 10, 11, 12, 13. The notes indicate Plaintiff's recovery process and the medications he was prescribed throughout the month after Plaintiff's assault. *Id.*, Exs. 8, 9, 10, 11, 12.

In response, Plaintiff states in his affidavit that he was sent to the hospital on December 4, 2003 "[b]ecause of continued medical problems and because of the failure and refusal on the part of the jailers and nurses at the jail to administer [his] medication to [him] as prescribed by the doctors at the hospital." Dkt. No. 11, Ex. A at 4. However, Plaintiff fails to provide even one example of an instance in which he was deprived of his medication. Plaintiff may not simply rely on this type of conclusory allegation in order to defeat summary judgment. *See Lockett*, 337 F. Supp. 2d at 891. Instead, he must produce evidence showing specific facts identifying a genuine issue to be determined at

trial. FED. R. CIV. P. 56(e); *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891.

Based on the foregoing, the Court concludes that there is no genuine issue of material fact as to Plaintiff's claim that Defendants failed to provide for his serious medical needs. Defendants have produced evidence showing that the County provided for Plaintiff's medical needs in a reasonable manner before and after the time Plaintiff was assaulted. Plaintiff has failed to produce any evidence showing that Defendants were deliberately indifferent to his medical needs or that a County employee was deliberately indifferent to a substantial risk of serious medical harm to Plaintiff and that such indifference was the result of an official policy or custom that was maintained with objective deliberate indifference, of which a policy maker was actually or constructively aware. Therefore, the Court determines that Defendants are entitled to summary judgment on Plaintiff's medical care claim.

### E. *Plaintiff's Failure to Supervise Claim*

Plaintiff has alleged that Defendants failed to "segregate detainees known to be dangerous for the purposes of control, discipline and health reasons" and that "Defendants knew or should have known of the violent tendencies of the actors who assaulted Plaintiff." Dkt. No. 1, Ex. 4 at 3. To the extent that Plaintiff attempts to state a claim against Defendants for failing to provide adequate inmate supervision, which resulted in a failure to protect him from inmate harm, the Court incorporates its previous discussion regarding Plaintiff's failure to protect claim and finds that Defendants are entitled to summary judgment on such claim. *See supra* § IV.C.

However, to the extent that Plaintiff's cause of action may be construed as a claim for the Defendants' failure to adequately supervise or train its employees in order to adequately assess a possible threat to Plaintiff, Plaintiff must show that the Defendants' failure to train its employees demonstrates a deliberate or conscious choice to jeopardize Plaintiff's constitutional rights. *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). More than an isolated incident of lack of training must be shown in order to constitute deliberate indifference. *Thompson*

v. Upshur County, Texas, 245 F.3d 447, 459 (5th Cir. 2001); *Snyder*, 142 F.3d at 798. Rather, a plaintiff must generally establish a pattern of lack of training or supervision in order to establish municipal liability. *Thompson*, 245 F.3d at 459; *Snyder*, 142 F.3d at 798.

In order to show that there is an absence of a genuine issue of material fact as to Plaintiff's claim that Defendants failed to train or supervise its employees, Defendants produced the following evidence: Minimum Jail Standards concerning classification, separation, and supervision of inmates established by the Texas Commission on Jail Standards, and the Affidavit of Sergeant Dionicio Cortez. Dkt. No. 7, Exs. 1–A, 1–B, 1–C, 15. The Commission standards provide that inmate classification and separation plans shall include training on the "principles, procedures and instruments for classification assessments, housing assignments, reassessments and inmate needs." *Id.*, Ex. 1–B at 3. Additionally, the standards state that "jailers or guards of county jails shall be licensed as per the requirements of the Texas Commission on Law Enforcement Officer Standards and Education" ("TCLEOSE"). *Id.*, Ex. 1–C at 1. In his affidavit, Sergeant Cortez declares that the Commission standards were used to train booking and classification officers. *Id.*, Ex. 15 at 2. Additionally, it had been the County's policy to hire detention officers who had already been certified by the TCLEOSE. *Id.* at 3. If non-certified personnel were hired, then they underwent a two-week long training at the Cameron County Jail Academy and were required to become certified by the TCLEOSE in order to retain their employment. *Id.* In response, Plaintiff has not provided any proper summary judgment evidence to support his allegation that Defendants failed to supervise or train its employees and that such failure resulted in violations of his constitutional rights.

As a result of the foregoing evidence, the Court finds that there is no genuine issue of material fact as to Plaintiff's failure to supervise claim. Defendants have produced evidence demonstrating that the County had policies and procedures providing for training and supervision of its employees in place at the time of the assault on Plaintiff. Plaintiff has failed to present evidence establishing a failure of Defendants to train County employees or that any such failure was a deliberate or conscious choice to jeopardize Plaintiff's constitutional rights. Furthermore, Plaintiff did not show a pattern of lack of

training or supervision. Accordingly, the Court determines that Defendants are entitled to summary judgment on Plaintiff's failure to supervise claim.

## V.    Analysis of Plaintiff's Claim Under the Texas Tort Claims Act

The Texas Tort Claims Act provides, in pertinent part, for government liability "for personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (Vernon 2005). Thus, sovereign immunity of a government entity is waived for the specific circumstances set forth in the statute. *Id.*; *see* Dallas County Mental Health and Mental Retardation v. Bossley, 968 S.W.2d 339, 341 (Tex. 1998). Inmates held in custody may file suit against the government entity under whose authority they are being held for a cause of action that falls within the Texas Tort Claims Act. *See* Buffington v. Tex. Dep't of Criminal Justice – Institutional Div., No. 11-02-00088-CV, 2003 WL 21512619 (Tex. App. 2003); Doyal v. Johnson County, 79 S.W.3d 139 (Tex. App. 2002); Murphy v. Galveston County, 788 S.W.2d 398 (Tex. App. 1990).

In the instant action, Plaintiff claims that "the negligence of the jailers and/or deputies, acting within their scope of employment with Defendants herein . . . resulted in the beating which Plaintiff received by the other inmates." Dkt. No. 1, Ex. 4 at 3. Plaintiff also alleges that the negligent actions "involved a condition or use of tangible personal and/or real property and [his] injuries were proximately caused by the Defendants' negligent implementation of its policies concerning the use of said property." *Id.* However, Plaintiff never alleges what specific "tangible personal and/or real property" was used by Defendants in order to cause his personal injuries. *See Buffington*, 2003 WL 21512619 at *2 (in which plaintiffs state that an inmate's death "was caused by a condition or use of tangible personal property, namely the door which separated the bathroom . . . from any and all prison guards and/or security"); *see also Murphy*, 788 S.W.2d at 939 (inmate declares that his injuries were caused when a county official "negligently closed the jail cell door on my hand"). Additionally, although alleging a specific use of property is necessary to state a claim under the Texas Tort Claims Act, the element of causation must also be

established in order for government immunity to be waived under § 101.021(2) of the Act. See Bossley, 968 S.W.2d at 342–43. "The requirement of causation is more than mere involvement . . . [i]f only involvement were required, the waiver of immunity would be virtually unlimited . . . [and this] would conflict with the Act's basic purpose of waiving immunity only to a limited degree." Id. at 343. Instead, use of the property must have actually caused the injury in some manner. Tex. Dep't of Criminal Justice v. Miller, 51 S.W.3d 583, 588 (Tex. 2001). Thus, when an inmate alleged that "he asked jail employees to make arrangements for his safety after other inmates threatened him," and he alleged that the county, county sheriff, and county health officer were liable under § 101.021(2) of the Texas Tort Claims Act because of their failure to use the jail to segregate him from the other inmates, the inmate's claim was dismissed because it was insufficient to establish waiver of immunity under the Act. Doyal, 79 S.W.3d at 139.

In the present case, Plaintiff fails to allege any specific tangible personal or real property that Defendants used and that proximately caused Plaintiff's injuries, and he fails to present any evidence showing evidence of such property use. Furthermore, to the extent that Plaintiff's claims may be construed to allege use of the jail itself—or the non-use of the jail—to improperly segregate Plaintiff from other inmates, Plaintiff has failed to state a claim that establishes waiver of sovereign immunity under the Texas Tort Claims Act. See Doyal, 79 S.W.3d at 139; see also Buffington, 2003 WL 21512619 at *2 (dismissing a claim under the Act for failure to establish waiver of immunity because "the door and the bathroom merely furnished conditions that made [the inmate's] injuries possible; they did not proximately cause his death" and therefore "the real substance of [the plaintiffs'] complaint is that their father's death was caused, not by a condition or use of property, but by the failure of the defendants to protect [the inmate] from [his attacker]"). Therefore, the Court concludes that Defendants are entitled to summary judgment regarding Plaintiff's claim pursuant to the Texas Tort Claims Act.

## VI.   Conclusion

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Cameron County's Opposed Motion to Strike Plaintiff's Summary Judgment

Evidence. Dkt. No. 13. The motion is **GRANTED** as to the entire affidavit of Joe Guajardo, Dkt. No. 11, Ex. B, and as to Plaintiff Andrew Paul Smith's affidavit declaration that he called out for assistance and medical attention after he had been attacked by fellow inmates, Dkt. No. 11, Ex. A at 2. The motion is **DENIED** as to Plaintiff's affidavit declaration regarding whether jail employees conducted cell checks on the evening in question. *See supra* § III.A–B.

Furthermore, the Court concludes that Defendant Cameron County, Texas, as the moving party in the instant motion, has met its summary judgment burden of establishing the absence of a genuine issue of material fact regarding all of Plaintiff's claims pursuant to 42 U.S.C. § 1983 and the Texas Tort Claims Act. The Court finds that Plaintiff Andrew Paul Smith has failed to come forward with specific evidence showing the existence of a genuine issue of fact regarding those claims. Therefore, the Court **GRANTS** Cameron County's Motion for Summary Judgment in its entirety. Dkt. No. 7.

DONE at Brownsville, Texas, this 27th day of April, 2007.

Hilda G. Tagle
United States District Judge